UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Johnson Brothers Liquor Company;
Johnson Brothers Northwest Beverages, Inc.,
d/b/a Ed Phillips & Sons Co. of North Dakota;
and Johnson Brothers Famous Brands, Inc.,
d/b/a Famous Brands and/or
Western Wholesale;

        Plaintiffs,        **MEMORANDUM OPINION AND ORDER**

    v.        Civil No. 12-144 ADM/AJB

Brown-Forman Corporation,

        Defendant.

---

Matthew L. Woods, Esq., and Scott M. Kranz, Esq., Robins Kaplan Miller & Ciresi LLP, Minneapolis, MN, on behalf of Plaintiffs.

Timothy B. Hardwicke, Esq., Latham & Watkins LLP, Chicago, IL, and Andrew M. Luger, Esq., and Erin Sindberg Porter, Esq., Greene Espel PLLP, Minneapolis, MN, on behalf of Defendant.

---

## I. INTRODUCTION

On May 2, 2012, the undersigned United States District Judge heard oral argument on Defendant Brown-Forman Corporation's ("Brown-Forman") Motion to Dismiss [Docket No. 13]. Plaintiffs Johnson Brothers Liquor Company ("Johnson Brothers Liquor"); Johnson Brothers Northwest Beverages, Inc., d/b/a Ed Phillips & Sons Co. of North Dakota ("Ed Phillips & Sons"); and Johnson Brothers Famous Brands, Inc., d/b/a Famous Brands and/or Western Wholesale ("Johnson Brothers Famous Brands") assert claims for breach of contract against Brown-Forman. For the reasons set forth below, Brown-Forman's motion is granted.

## II.  BACKGROUND[1]

Plaintiffs the Johnson Brothers Companies (Johnson Brothers Liquor, Ed Phillips & Sons, and Johnson Brothers Famous Brands are, collectively, the "Johnson Brothers Companies") distribute alcoholic beverages throughout the upper Midwest.  Compl. [Docket No. 1] ¶ 10.  Ed Phillips & Sons and Johnson Brothers Famous Brands are subsidiaries of Johnson Brothers Liquor.  Compl. ¶ 4.  Defendant Brown-Forman is in the business of producing, importing, distributing, marketing, promoting, and selling alcoholic beverages throughout the United States.  Compl. ¶ 5.

In July 1987, Brown-Forman entered into three contracts (the "North Dakota Agreement," the "Eastern South Dakota Agreement," and the "Western South Dakota Agreement") with Ed Phillips & Sons and Johnson Brothers Famous Brands to distribute (each in their respective regions of North Dakota, eastern South Dakota, and western South Dakota) Brown-Forman products.  Compl. ¶¶ 12–14.  In June 1989, a division of Brown-Forman and Johnson Brothers Liquor entered into a contract (the "Minnesota Agreement") for distribution of Brown-Forman products in Minnesota.  Compl. ¶ 15.  In July 1998, a division of Brown-Forman and Johnson Brothers Liquor entered into a contract (the "Iowa Agreement") for distribution of Brown-Forman wine products in Iowa.  Compl. ¶ 16.

Each of the five agreements at issue included clauses allowing either party to terminate the agreement without cause if provided ninety-days written notice.  On January 1, 2011, Brown-Forman orally informed Johnson Brothers Liquor's CEO of its decision to terminate the agreements.  Compl. ¶ 23.  On January 4, 2011, Brown-Forman gave written notice of its intent

---

[1]  In considering Defendant's Motion to Dismiss, the Court considers the facts alleged in Plaintiffs' Complaint to be true.  See Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

to terminate Johnson Brothers Liquor's wine distribution rights in Minnesota and Iowa and all distribution rights in North Dakota and South Dakota. Compl. ¶ 24. In so doing, Brown-Forman informed the Johnson Brothers Companies that Brown-Forman was "moving to align" distribution with another alcoholic beverages manufacturer, Bacardi U.S.A., Inc. Johnson Bros. Liquor Co. v. Bacardi U.S.A., Inc., 830 F. Supp. 2d 697, 701 (D. Minn. 2011). Brown-Forman informed the Johnson Brothers Companies the termination would be effective March 31, 2011. Compl. ¶ 24. The Johnson Brothers Companies allege that the actual effective date was April 4, 2011, due to the ninety-day written notice requirement. Compl. ¶ 25.

Each agreement provides for payment by Brown-Forman to the Johnson Brothers Companies in the event Brown-Forman terminates the agreement without cause. The North Dakota Agreement provides such payment "shall be in full and complete discharge of any and all claims of [Ed Phillips & Sons] against [Brown-Forman] for cancellation of this contract by [Brown-Forman]." Compl. Ex. A ("North Dakota Agreement") ¶ 13(e). The Eastern South Dakota Agreement provides such payment "shall be in full and complete discharge of any and all claims of [Johnson Brothers Famous Brands] against [Brown-Forman] for cancellation of this contract by [Brown-Forman]." Compl. Ex. B ("Eastern South Dakota Agreement") ¶ 13(e). The Western South Dakota Agreement has the same language. Compl. Ex. C ("Western South Dakota Agreement") ¶ 13(e). The Minnesota Agreement provides that the payments "shall be in full and complete discharge of any and all claims, whether statutory or otherwise, of [Johnson Brothers Liquor] against [Brown-Forman] for cancellation of this contract by [Brown-Forman]." Compl. Ex. D ("Minnesota Agreement") ¶ 13(d). The Iowa Agreement has language that is nearly identical. Compl. Ex. E ("Iowa Agreement") ¶ 13(c). On January 10, 2011, Brown-Forman sent a letter to the Johnson Brothers Companies stating Brown-Forman would comply

with those provisions and tender payment when due. Compl. ¶ 29. On February 22, 2011, Brown-Forman reaffirmed that, "We will comply with the payment provisions of these agreements upon the effective date of termination." Compl. ¶ 30.

Around this time, the Johnson Brothers Companies informed Brown-Forman that they believed Brown-Forman's termination of the agreements violated the Minnesota Franchise Act ("MFA") and Sherman Antitrust Act. Compl. ¶ 28. The antitrust claim was premised on Brown-Forman's remarks to the Johnson Brothers Companies that it was "moving to align" distribution with Bacardi, and other comments made by the manufacturers regarding a partnership between the brands. Johnson Bros. Liquor, 830 F. Supp. 2d at 701. On March 21, 2011, the Johnson Brothers Companies sent Bacardi a draft complaint, and on March 23, 2011, Bacardi filed a declaratory judgment action in the U.S. District Court for the Southern District of Florida. Id. at 702. On April 4, 2011,[2] the Johnson Brothers Companies commenced an action in this Court (the "2011 Action") against both Bacardi and Brown-Forman alleging violations of the MFA and federal antitrust laws. Id. On November 17, 2011, the Court dismissed that action, ruling that the Johnson Brothers Companies had failed to state a claim against either Brown-Forman or Barcardi under the MFA or under a concerted refusal to deal theory. See generally id. at 703–11.

On September 16, 2011, while the motion to dismiss in the 2011 Action was pending, the Johnson Brothers Companies informed Brown-Forman it was seeking payments for "bill-backs" and credit memos. Compl. ¶ 39. On December 7, 2011, the Johnson Brothers Companies demanded cancellation payments from Brown-Forman, and followed up with a letter on December 13, 2011. Compl. ¶¶ 41–42. On December 21, 2011, Brown-Forman advised the

---

[2] The Johnson Brothers Companies aver they actually filed the Complaint in that action on March 31, 2011, but for reasons unknown it was not docketed until April 4, 2011.

Johnson Brothers Companies it would not tender the cancellation payments, and confirmed that position in writing on January 10, 2012.  Compl. ¶¶ 43–44.  This litigation ensued.

### III.  DISCUSSION

#### A.     Motion to Dismiss Standard

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief."  A pleading must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'"  Id. (quoting Fed. R. Civ. P. 8(a)(2)).

**B.     Choice of Law**

The parties do not advocate any particular choice of law analysis. Rather, they predominately cite Minnesota law. Federal courts apply the choice of law rules of the forum state. Larken, Inc. v. Wray, 189 F.3d 729, 732–33 (8th Cir. 1999). "Minnesota holds that the law of the State in which the contract is to be performed governs the performance of the contract." In re Wis. Cent. Ry. Co., 63 F. Supp. 151, 159 (D. Minn. 1945). Here, the agreements were to be performed in North Dakota, South Dakota, Minnesota, and Iowa. However, Minnesota law allows parties to specify what law will govern their contracts. Milliken & Co. v. Eagle Packaging Co., 295 N.W.2d 377, 380 n.1 (Minn. 1980). Each agreement provides that it "shall be construed according to the laws of Kentucky . . . ." North Dakota Agreement ¶ 18; Eastern South Dakota Agreement ¶ 18; Western South Dakota Agreement ¶ 18; Minnesota Agreement ¶ 19; Iowa Agreement ¶ 19. Contractual choice of law provisions typically specify that the contract will be "governed" and "construed" in accordance with the laws of a particular state. JAZME, LLC v. Wendt Corp., 809 F. Supp. 2d 957, 964 n.2 (D. Minn. 2011) (applying New York law where contract stated it would be "governed and construed in accordance with New York state law"). Nevertheless, even where a contract merely states it will be "construed" under the laws of a particular jurisdiction, courts applying Minnesota choice of law rules have held that such law governs the performance of the contract. See AEI Income & Growth Fund 24, LLC v. Parrish, 200 Fed. App'x 621, 622 (8th Cir. 2006) (upholding district court's decision to apply Minnesota law to interpret and enforce contract where contract provided it was "executed and intended to be construed under Minnesota law"); see also Havens Steel Co. v. Randolph Eng'g Co., 813 F.2d 186, 188 n.4 (8th Cir. 1987) (holding Missouri law

applied to contract, under Missouri's choice of law rules, where contract stated "This agreement shall be construed according to the laws of the State of Missouri"). Therefore, Kentucky law governs the agreements at issue.

**C.    Minnesota Agreement (Count IV)**

Johnson Brothers Liquor asserts a claim for breach of contract against Brown-Forman for failure to pay cancellation payments. To prevail on a breach of contract claim under Kentucky law, a plaintiff must prove: (1) existence of a contract, (2) breach of that contract, and (3) damages flowing from the breach of contract. Metro Louisville/Jefferson Cnty. Govt. v. Abma, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009). Under the Minnesota Agreement, cancellation payments are due only "in the event of cancellation" by Brown-Forman. Minnesota Agreement ¶ 13. However, Johnson Brothers Liquor does not allege that Brown-Forman has cancelled the Minnesota Agreement. Rather, Johnson Brothers Liquor alleges only that "Brown-Forman no longer uses Johnson Brothers Liquor as its preferred spirit distributor in Minnesota." Compl. ¶ 26. The term "preferred spirit distributor" is not used in the Minnesota Agreement. No allegations have been made that the Minnesota Agreement has been cancelled. Without cancellation, a condition precedent to cancellation payments, there can be no liability of Brown-Forman. See Collings v. Scheen, 415 S.W.2d 589, 593 (Ky. 1967) (holding contract was unenforceable by plaintiff that had not satisfied condition precedent). Johnson Brothers Liquor's claim for breach of contract is dismissed without prejudice. State ex rel. Nixon v. Prudential Health Care Plan, Inc., No. 4:00CV8, 2000 WL 33952262, at *5 (E.D. Mo. June 28, 2000) (dismissing breach of contract claims without prejudice where plaintiff failed to perform conditions precedent).

## D.     North Dakota, Eastern South Dakota, Western South Dakota, and Iowa Agreements (Counts I, II, III, and V)

Central to the present motion is the effect to be given to the prior action between these parties. By way of this current action, the Johnson Brothers Companies assert breach of contract claims against Brown-Forman for failure to tender cancellation payments as contemplated by the various agreements. Brown-Forman does not dispute that it has not made cancellation payments. Instead, Brown-Forman argues it is no longer obligated to make payments because the Johnson Brothers Companies' counter-performance (discharging any and all claims "for cancellation" of the agreements) is now impossible in light of the 2011 Action.

As always, we begin with the contractual language itself. See Ford v. Ratliff, 183 S.W.3d 199, 202–03 (Ky. Ct. App. 2006) (noting contracts interpretation begins with a determination of whether contractual language is ambiguous). In the absence of ambiguity, a contract will be enforced strictly according to its terms without resort to extrinsic evidence. Frear v. P.T.A. Indus., Inc., 103 S.W.3d 99, 106 (Ky. 2003). The distribution agreements require Brown-Forman to make cancellation payments to the various Johnson Brothers Companies, those payments "shall be in full and complete discharge" of "any and all claims" of the Johnson Brothers Companies against Brown-Forman "for cancellation" of each agreement.[3] North Dakota Agreement ¶ 13(e); Eastern South Dakota Agreement ¶ 13(e); Western South Dakota Agreement ¶ 13(e); Iowa Agreement ¶ 13(c). This language is not ambiguous. A claim "for cancellation" of an agreement plainly means a claim that is based on, or premised on, or has as a factual predicate, the cancellation of the agreement. The Johnson Brothers Companies cite

---

[3] The Iowa Agreement includes the additional proviso that "any and all claims, whether statutory or otherwise" shall be discharged. Iowa Agreement ¶ 13(c). This additional language does not alter the analysis. Rather, this broadening language bolsters it with respect to the Iowa Agreement.

several statements made by Brown-Forman it alleges were promises to pay the cancellation agreements even after the initiation of the 2011 Action. Sometimes, the post-contractual conduct of parties may be relevant to construction of contract terms. However, no such extrinsic evidence is permissible where, as here, contract language is unambiguous. See Frear, 103 S.W.3d at 106.

Brown-Forman, however, argues that it is not required to make payments because the Johnson Brothers Companies did not discharge the claims in the 2011 Action, but rather litigated that matter to final judgment. It is well-established in contracts law that a party's performance is excused when the other party materially breaches a contract. Dalton v. Mullins, 293 S.W.2d 470, 476 (Ky. 1956) ("[T]he party first guilty of a breach of contract cannot complain if the other party thereafter refuses to perform.") (citation omitted). Here, of course, Brown-Forman's performance was due prior to the Johnson Brothers Companies' performance under each agreement. Nevertheless, under the doctrine of anticipatory repudiation, an unequivocal expression that a party will not honor the contract is equivalent to a later breach. See Vermillion v. Marvel Merchandising Co., 234 S.W.2d 673, 674 (Ky. 1950) (holding that parties could treat anticipatory breach as breach of entire contract). The question becomes, therefore, whether the claims in the 2011 Action were for cancellation of the agreements or for something else. If the claims were for cancellation of the contract, those claims have been litigated to final judgment and a "full and complete discharge" is impossible.[4] If the claims were not for cancellation of the contract, no such claims have been brought and may still be discharged.

---

[4] The Johnson Brothers Companies argue it is not impossible to perform because they could dismiss their pending appeal in the 2011 Action. However, an appeal is not a claim as contemplated by the agreements. Rather, it is a review of this Court's decision to dismiss the claims in the 2011 Action. See Black's Law Dictionary 113 (9th ed. 2009) (noting an "appeal" is a proceeding to review a decision of a lower court).

9

The Johnson Brothers Companies argue their MFA claims in the 2011 Action were not "for cancellation" of the distribution agreements, but rather were premised on the cancellation of an implied distribution agreement between Johnson Brothers Liquor and Brown-Forman spanning the upper Midwest. See Johnson Bros. Liquor, 830 F. Supp. 2d at 703–06 (discussing Johnson Brothers Liquor's MFA claims in 2011 and theory of an implied distribution contracts with Bacardi and Brown-Forman).  Assuming without accepting the Johnson Brothers Companies' distinction between the express and implied contracts means the MFA claims were not "for cancellation" of the agreements, the Johnson Brothers Companies' argument fails because their Sherman Act claims were certainly claims "for cancellation."

The antitrust claims in the 2011 Action were not dependent on any implied contract theories.  See generally id. at 706–11 (discussing antitrust claims without analysis of implied contract theory).  In the 2011 Action, the Johnson Brothers Companies asserted Sherman Act claims against Brown-Forman alleging a "concerted refusal to deal" between Brown-Forman and Bacardi.  Id.  Those claims were rejected because Brown-Forman and Bacardi lacked market power, lacked access to an essential element of production, and their alignment was not an unreasonable restraint on competition as alleged.  Id.

Notwithstanding that determination, the factual basis of those claims was the cancellation of the various distribution agreements that both Brown-Forman and Bacardi had with the Johnson Brothers Companies.  The cancellation of the contracts was the "refusal to deal" with the Johnson Brothers Companies—without cancellation of the contracts Brown-Forman would still be dealing with the Johnson Brothers Companies as its distributors (as Brown-Forman is presently dealing in Minnesota with Johnson Brothers Liquor).  The Johnson Brothers Companies attempt to avoid this result by arguing that their antitrust claims were based on the concerted action of Brown-Forman and Bacardi, not cancellation of the distribution agreements.

Admittedly, concerted action between Brown-Forman and Bacardi was a predicate of the claims in the prior action. After all, the Johnson Brothers Companies alleged a "concerted refusal to deal." The *refusal to deal*, however, was predicated on the cancellation of the distribution agreements. Therefore, the 2011 action was "for cancellation" of the agreements, the Johnson Brothers Companies cannot discharge those claims, and Brown-Forman's non-performance is excused. The Johnson Brothers Companies' breach of contract claims are dismissed.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Brown-Forman's Motion to Dismiss [Docket No. 13] is **GRANTED**;

2. Count IV of the Complaint is **DISMISSED WITHOUT PREJUDICE**; and

3. Counts I, II, III, and V of the Complaint are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

                                              BY THE COURT:

                                              s/Ann D. Montgomery
                                              ANN D. MONTGOMERY
                                              U.S. DISTRICT JUDGE

Dated: June 18, 2012.